## Baird et al. v. Moshannon Coal Mining Company

*E. J. Thompson, John Blanchard* and *Edmund Blanchard,* for plaintiffs.
*Frank G. Smith* and *A. M. Liveright,* for defendant.

FLEMING, P. J., November 20, 1931.—One of the two receivers named for the defendant company has petitioned the court for an order authorizing the issuance and sale of receivers' certificates to the amount of $5000, or so much thereof as may be necessary to meet the several items set forth in such petition. The second receiver declined to join in this petition, giving at the hearing no sound

reason for his declination other than that he had so acted upon the advice of counsel, and that, in his opinion, such certificates should not be issued.

It appears that the objects for which such certificates are sought to be issued are principally taxes upon real estate and improvements which accrued in 1930, before the receivership, and in 1931, since the receivership. Other objects are royalties, premiums on receivers' bonds, balances on receivers' salaries, insurance, etc.

J. K. Johnston, who was president of the defendant company and directed its management prior to the receivership, asked and obtained permission of the court to intervene in this matter, in his capacity as executor of the last will and testament of Annie C. Rowland, deceased, as well as surviving administrator of the estate of Charles H. Rowland, deceased, and has filed an answer, which has been carefully considered by the court.

It appears that the estate of Annie C. Rowland, deceased, is a lien creditor of the defendant company to the extent of $20,000 and accrued interest. It further appears that the defendant company is indebted to the estate of Charles H. Rowland, deceased, in a considerable sum for accrued minimum royalties. The objection is raised that the issuance of receivers' certificates, as prayed for, taking preference as to lien upon the defendant's property, will thus prejudice accordingly the security of the now existing liens. Mr. Johnston, further declaring himself to be the representative of interests holding fifty-five per cent. of the capital stock of the defendant company, asserts that the issuance of such certificates will seriously dilute the equity of the capital stock to which he refers.

It is to be borne in mind that this receivership originated in May, 1931, at the end of what is generally known as the productive season in the coal industry. The receivers, while suffering operating losses in every month of the receivership, that is to say, during the dull season, have, nevertheless, reduced these losses from those experienced prior to their taking office. There is nothing to controvert the opinion existing in the mind of the court that the receivers have practiced every economy and exerted every effort to preserve the company's interest, as well as to protect the equity of the stockholders. That they have been unable to meet obligations imposed before the receivership is not unusual or surprising. The testimony, adduced at the hearing on this petition, shows that they have paid their current bills in spite of the dull season and the economic condition of the industry. To deprive them of some aid, at the threshold of what should be a better business season than any that they have yet experienced, might be to place a handicap upon them which would spell certain failure. If any opportunity exists to preserve the corporation it is now. We do not feel that we should continue indefinitely to hope with them for better conditions, or that we should again be asked to authorize certificates in additional amounts. We do feel, however, that we should aid them through the present season of the industry and then determine finally the future of the receivership.

Before doing so, however, it becomes our duty to consider the contentions of the lien creditors and stockholders.

If we recall correctly the testimony of Mr. Johnston, representative of the estates of Charles H. Rowland and Annie C. Rowland, both deceased, when testifying as the president of the defendant company at the original hearing on the application for receivership last spring, the lien of the estate of Annie C. Rowland, deceased, was accepted by him for such estate when the status of the defendant company was not much, if any, better than it now is. We feel, in any event, that the addition of the sum requested in the present petition would not reduce the margin of security of the Rowland judgment to an extent sufficient to materially, if at all, prejudice the interest of the lien holder. If the appraise-

ment filed in the receivership proceedings without exceptions is to be accepted as correct, in any sense, this must be true.

As to the claim of the estate of C. H. Rowland, deceased, for minimum royalty, the allowance of receivers' certificates in the sum asked for would not impair its rights or deprive it of any remedy now existing at common law. This lease is to terminate December 14, 1931, and the additional month's minimum will not appreciably affect such rights. This minimum sounds of war times and has undoubtedly been a heavily contributing cause for the red ink shown on the company's statements.

As to the stockholders generally, we feel that the allowance of these certificates is the last extreme remedy possible to be applied to save a material sum for them. It is true that even they may not bring the hoped-for resuscitation of this once powerful and income-producing industry. But to deny their issuance means only the liquidation of the company now—a time when, if any improvement is possible, it should come. Mr. Johnston, in his testimony at the hearing on the present petition, recommends "some" form of liquidation at the present time. We are of the opinion that "any" form of liquidation now would be disastrous to the stockholders. Mr. Todd, the nonjoining coreceiver, says that it would be "a better gamble" to keep the concern going during the winter season than to liquidate at once. We are constrained to concur in his opinion.

We are not so deeply impressed with the proposed idea of using a portion of the moneys to be derived from the sale of these certificates to underwrite the payrolls of the company. To pay the moneys to save the property from tax sales or additional costs to be incurred in the entry of tax liens; to pay royalties and thus avoid loss of property by landlord's distress or otherwise; and to make payment for any purpose tending to protect or preserve the property is proper. If the business cannot pay the labor necessary to conduct it, it would be simply adding to the company's distressed condition to continue. We have faith in the receivers sufficient to assure us that they agree with this thought and will not permit such to be practiced.

We shall grant the prayer of the petition upon the condition that such certificates shall be sold only in such amounts, from time to time, as shall be necessary, and upon the further condition that the proceeds shall be expended in the following order, viz.: (1) Taxes for 1930 and 1931; (2) royalties in such amounts and to such persons as, in the judgment of the receivers, shall be necessary to preserve the company's property; (3) arrears of receivers' salaries; (4) premiums due or to become due upon insurance upon company's property or for workmen's compensation required to protect the company against liability during operations; (5) premiums upon receivers' bonds; (6) such other expenditures as, in the judgment of the receivers, shall be required to preserve the company's property.

This disposition is being made to afford the receivers an opportunity to avail themselves of the increased demand for coal during the winter season. It becomes a final test of the advisability of continuing the receivership. We shall entertain no further requests of a like nature unless positive and convincing proofs are shown. Not later than May 1, 1932, we shall require the receivers to file with us a full and complete report, at which time the question of further continuing the business will be adjudicated.

And now, November 20, 1931, the prayer of the petition of E. C. Poorman, receiver, is granted and the receivers are hereby authorized to issue and sell receivers' certificates in the sum of $5000, or so much thereof as may be necessary, and, as necessary, upon the conditions and for the purposes expressed in the foregoing opinion.          From S. D. Gettig, Bellefonte, Pa.